Kimberly **LARSEN** f/k/a Kimberly Kaiser, on behalf of herself and all others similarly situated, Plaintiffs,

v.

**JBC LEGAL GROUP, P.C.** f/k/a JBC & Associates, P.C., JBC Legal Group, P.C. f/k/a JBC Associates, Inc., JBC & Associates, P.C., JBC Associates, Inc., Jack Boyajian, Marv Brandon a/k/a Marvin Brandon, and Outsource Recovery Management, Inc., Defendants.

No. CV 04–4409 (ETB).

United States District Court, E.D. New York.

Feb. 12, 2008.

Brian L. Bromberg, Bromberg Law Office, P.C., New York City, Joseph Mauro, Law Office of Joseph Mauro, LLC, West Islip, NY, Lance A. Raphael, Stacy M. Bardo, Consumer Law Center, P.C., Chicago, IL, for Plaintiffs.

JBC Legal Group, P.C., Jack Boyajian, Marv Brandon, Outsource Recovery Management, Inc., pro se.

## MEMORANDUM OPINION AND ORDER

E. THOMAS BOYLE, United States Magistrate Judge.

Plaintiff, Kimberly Larsen ("Larsen"), brings this action pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, seeking statutory damages, attorney's fees and costs. Plaintiff alleges that defendants, JBC Legal Group, P.C., formerly known as JBC & Associates, P.C. ("JBC"), Jack Boyajian ("Boyajian"), Marv Brandon, also known as Marvin Brandon ("Brandon"), and Outsource Recovery Management, Inc. ("ORM"), violated the FDCPA when they attempted to collect a debt from her in 2003. Before the court is the plaintiff's motion for partial summary judgment against all defendants. For the following reasons, plaintiff's motion is granted in part and denied in part.

### PROCEDURAL HISTORY

This action was commenced by the filing of a Complaint against all defendants except ORM on October 13, 2004. An Amended Complaint was then filed on December 7, 2004. All of the then-named defendants submitted an Answer on December 30, 2004.

On August 5, 2005, plaintiff filed a Second Amended Complaint against all of the previously named defendants plus ORM. JBC, Boyajian and Brandon submitted a joint Answer on September 7, 2005. ORM filed its Answer on that same date as well.

Although plaintiff initially sought to bring this action on behalf of all others similarly situated and moved for class certification on December 20, 2006, that motion was subsequently withdrawn, without prejudice, on April 10, 2007, at the request of the plaintiff, and not renewed. Accordingly, the within summary judgment motion is brought solely on behalf of plaintiff.

By Order dated May 3, 2007, the Court directed that any dispositive motions be made on or before July 2, 2007. Any opposition was to be filed by August 31, 2007 and a reply, if any, was to be submitted by September 10, 2007. (Order of Boyle, J., dated May 3, 2007.) After granting plaintiff's requests for extensions

on two occasions, the within motion was ultimately filed on July 11, 2007. Opposition was received from defendant Brandon, apparently acting *pro se*, on September 4, 2007, which the Court notes is four days beyond the deadline for submitting any opposition and is deficient in many respects. Although Brandon submitted what purports to be a Rule 56.1 counter-statement, his submission does not comport with the requirements of the local civil rules.

■ Local Civil Rule 56.1(c) states that "unless specifically controverted by a correspondingly numbered paragraph in the statement [of material facts] required to be served by the opposing party," the material facts set forth in the moving party's Rule 56.1 statement "will be deemed to be admitted for purposes of the [summary judgment] motion." Local Civ. R. 56.1(c). Moreover, Local Civil Rule 56.1(d) unambiguously requires that "[e]ach statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e)." Local Civ. R. 56.1(d). Brandon has failed to comply with either of these requirements. Rather, the majority of Brandon's Rule 56.1 statement simply contains responses that plaintiff's

statements of material fact are "[i]rrelevant" and that they "[d]o[ ] not relate to liability as against Marv Brandon."[1] (Brandon's Rule 56.1 Stmt. ¶¶ 1–8, 11–76.) Nothing in Brandon's Rule 56.1 statement can be construed as a statement of material fact. Moreover, Brandon has failed to include any evidentiary citations in his Rule 56.1 statement, as required by Rule 56.1(d). As a result of this omission, Brandon's Rule 56.1 statement is wholly inadequate and "must be disregarded."[2] *Fernandez v. DeLeno,* 71 F.Supp.2d 224, 227 (S.D.N.Y.1999); (citing *Titan Indem. Co. v. Triborough Bridge & Tunnel Auth., Inc.,* 135 F.3d 831, 835 (2d Cir.1998)); *see also Cooper v. Gottlieb,* No. 95 Civ. 10543, 2000 WL 1277593, at *4, 2000 U.S. Dist. LEXIS 12936, at *12–13 (S.D.N.Y. Sept. 4, 2000) (deeming the statements contained in movants' Rule 56.1 statement admitted where non-movants failed to cite to or submit any evidentiary support for the statements in their Rule 56.1 statement in opposition to motion for summary judgment).

With respect to the remaining defendants, no opposition to the within motion has been received whatsoever. Accordingly, since JBC, Boyajian and ORM have failed to file any opposition, and more specifically have failed to comply with Local Civil Rule 56.1(b), which requires the submission of a counter-statement of "materi-

---

1. All of Brandon's responses are virtually identical with the exception of two numbered paragraphs. With respect to plaintiff's paragraph eleven, Brandon states that the statement of material fact contained therein is "[v]ague and [a]mbiguous as to whom it applies," (Brandon's Rule 56.1 Stmt. ¶ 11), and Brandon's response to plaintiff's paragraph nine is simply "none," which the Court presumes is meant to imply that Brandon does not dispute this statement of material fact. (*Id.* ¶ 9.)

2. Although it appears that Brandon is acting *pro se* with respect to this motion, the rules

afforded *pro se* litigants are not relaxed when that litigant is also an attorney, as Brandon is. *See Leeds v. Meltz,* 898 F.Supp. 146, 149 (E.D.N.Y.1995), *aff'd,* 85 F.3d 51 (2d Cir. 1996) (holding that *pro se* attorney was not entitled to the liberality normally accorded *pro se* litigants); *Woods v. State,* 469 F.Supp. 1127, 1128 n. 1 (S.D.N.Y.1979) ("Although [defendant] appears *pro se,* he is an attorney and is held to the same standards as other attorneys appearing before the court."); *DeFina v. Latimer,* 79 F.R.D. 5, 6 (E.D.N.Y.1977) (requiring skillfully drawn pleadings from the *pro se* plaintiff because she was an attorney).

al facts" in opposition to a motion for summary judgment, *see* Local Civ. Rule 56.1, all of the facts in plaintiff's Rule 56.1 Statement that pertain to JBC, Boyajian and ORM are deemed admitted. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir.2003) ("If the opposing party ... fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.") (citing Local Rule 56.1(c)). "[W]here a party against whom summary judgment is sought fails entirely to respond to the motion, the court need ensure only that the averments in the movant's Rule 56.1 statement are supported by evidence and show an absence of a genuine issue for trial." *Morisseau v. Piper*, No. 06 Civ. 13255, 532 F.Supp.2d 595, 618, 2008 WL 273410, at *18, 2008 U.S. Dist. LEXIS 4699, at *60 (S.D.N.Y. Jan. 23, 2008) (citing *Vermont Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 243 (2d Cir.2004)) (additional citation omitted).

## FACTS

Plaintiff, Kimberly Larsen, is a consumer within the meaning of the FDCPA, who allegedly owes a debt that is the subject of collection efforts. (Pl. 56.1 Stmt. ¶ 1; Decl. of Kimberly Larsen, dated July 9, 2007 ("Larsen Decl."), ¶ 1.) Defendant JBC Legal Group, P.C., formerly known as JBC & Associates, P.C.,[3] is a debt collector incorporated in California, with a place of business located at 2 Broad Street in Bloomfield, New Jersey. (Pl. 56.1 Stmt. ¶¶ 2–3, 21; Reply Decl. of Brian L. Bromberg, dated Sept. 20, 2007 ("Bromberg Reply Decl."), Ex. A.) Defendant Boyajian, an attorney licensed to practice in California, was the President and owner of JBC & Associates, P.C.[4] (*Id.* ¶ 50.) Boyajian is also the President and Secretary of JBC Legal Group, P.C.—and, presumably, its owner as well since he owned its predecessor entity—and is, at various times, personally involved in JBC's collection process, including reviewing new claims and cases, establishing procedures for debtor contact and verification, responding to complaints and inquiries, managing litigation brought to collect debts, overseeing and managing the operations of JBC's Compliance Department, supervising paralegal and office staff and "dealing with unique issues that arise." (*Id.* ¶ 7–8; Bromberg Reply Decl., Ex. A.) Defendant Brandon is an attorney licensed to practice in New York and New Jersey who was employed by JBC & Associates, P.C. and appears to currently be in business with defendant Boyajian.[5] (Pl. 56.1 Stmt. ¶¶ 9,

3. In August 2005, JBC Legal Group, P.C. apparently changed its name once again to Boyajian & Brandon Legal Group, P.C. (Bromberg Reply Decl., ¶ 6 and Ex. A, annexed thereto.) This amendment was endorsed by the Secretary of State of California on September 15, 2005. (Bromberg Reply Decl., Ex. A.)

4. Boyajian was also the President of JBC & Associates, Inc., which plaintiff asserts is also a predecessor in interest to JBC Legal Group, P.C. (Pl. 56.1 Stmt. ¶¶ 4, 49.) However, in deposition testimony provided by Boyajian in another action, *Goins v. JBC & Assoc., P.C.*, No. 3:03cv636 (D.Conn.), which plaintiff submitted in support of the within motion, Boyajian states that there is no relationship between "JBC, Inc." and "JBC, P.C." (Dep. of Jack H. Boyajian, dated Jan. 27, 2004 ("Boyajian Dep."), at 19, annexed to Decl. of Brian L. Bromberg, dated July 11, 2007 ("Bromberg Decl.") at Ex. FF.) Boyajian goes on to state that "JBC, Inc. is a New Jersey corporation that was engaged in collection activities and no longer is doing so. And JBC, PC is a California professional corporation, a law firm." (*Id.*, 21.) In addition, when asked whether JBC & Associates, Inc. and JBC & Associates, P.C. were a "singular entity that changed its name from Inc. to PC," Boyajian responded "[n]o." (*Id.*, 19.)

5. It is unclear what Brandon's role is in relation to JBC Legal Group, P.C. since, although he disputes the plaintiff's allegations that he functioned as a debt collector for JBC Legal Group, P.C., Brandon does not explain what

12; Brandon's 56.1 Stmt. ¶ 9; Decl. of Brian L. Bromberg, dated July 11, 2007 ("Bromberg Decl."), Ex. EE; Bromberg Reply Decl., Ex. A.)

On or about October 24, 2003, defendant JBC Legal Group, P.C. sent or caused to be sent a letter to plaintiff, seeking to collect a debt alleged to be owed by plaintiff in the amount of $43.87 (the "debt collection notice"). (Pl. 56.1 Stmt., ¶ 21; Compl. ¶ 28; Larsen Decl., ¶ 3 and Ex. A, annexed thereto.) Boyajian was an officer of JBC Legal Group, P.C. at this time. (Pl. 56.1 Stmt. ¶ 6.) The debt collection notice stated that it sought payment for an alleged "bad check," purported to be have been written by plaintiff on a Chase Manhattan checking account on April 14, 1993, in the amount of $23.87.[6] (Larsen Decl., ¶ 3 and Ex. A.) This was the first communication that plaintiff received from JBC.[7] (Pl. 56.1 Stmt., ¶ 22; Larsen Decl., ¶ 3.)

The debt reflected in the October 24, 2003 debt collection notice is allegedly due to defendant ORM, which claims to have acquired the debt in or about October 2003. (Pl. 56.1 Stmt. ¶ 33.) The business of ORM is to purchase debts that are in default from other entities. (*Id.* ¶ 37.) Boyajian is the president and director of

ORM and ORM's address is the same as that of JBC Legal Group, P.C. (*Id.* ¶¶ 34–36.) ORM retained JBC to collect the alleged debt from plaintiff. (*Id.* ¶ 38.) ORM uses JBC exclusively as the collector on the debts that it purchases. (*Id.* ¶ 39.)

Although the October 24, 2003 debt collection notice that plaintiff received stated that failure to satisfy the debt may result in legal action being taken against her, no such litigation was in fact commenced. (Larsen Decl., ¶ 7 and Ex. A; Pl. 56.1 Stmt., ¶ 25.) Plaintiff has not paid the amount alleged to be owed by her in the October 24, 2003 letter. (Pl. 56.1 Stmt., ¶ 24.)

Defendant Boyajian is the individual responsible within JBC for reviewing the accounts and deciding whether to send letters such as the October 24, 2003 debt collection notice received by plaintiff. (*Id.* ¶ 43.) Boyajian is also responsible for determining the amount demanded in these notices, as well as whether or not to institute litigation with respect to a particular debt. (*Id.* ¶¶ 44–45.) Boyajian reviewed and/or drafted the form of the notices that JBC sent to alleged debtors in connection with its efforts to collect a debt, including the October 24, 2003 debt collection notice sent to plaintiff, and authorized the mailing of such notices.[8] (*Id.* ¶¶ 46–47.)

role, if any, he played with respect to that entity. (*See generally* Brandon's Opp'n to Mot. for Summ. J.) While the documentary evidence submitted by plaintiff establishes that Brandon was a debt collector for JBC & Associates, Inc., Brandon asserts that JBC & Associates, Inc. is a wholly separate organization than JBC & Associates, P.C., which, as stated above, is the predecessor in interest to JBC Legal Group, P.C. (*Id.*) In *Goins*, the United States District Court for the District of Connecticut found that Brandon was an employee of JBC & Associates, P.C. *See Goins v. JBC & Assoc., P.C.,* 352 F.Supp.2d 262, 264 (D.Conn.2005). Brandon testified to that effect as well during a deposition taken in connection with that case. (Dep. of Marv Brandon, dated Sept. 5, 2003 ("Brandon Dep."), at 5, annexed to Bromberg Decl. as Ex. EE.)

6. While the amount of the check written by plaintiff was alleged to be $23.87, the amount of the debt sought to be collected was $43.87, which included a $20 "return charge" or "service charge." (Larsen Decl., Ex. A.)

7. Defendants claim to have sent plaintiff a second letter as well, dated January 14, 2004; however, plaintiff has no recollection of receiving a second letter. (Pl. 56.1 Stmt., ¶ 23; Larsen Decl., 8 and Ex. B, annexed thereto.)

8. It should be noted that the defendants herein have also been sued in other states for sending notices similar to the one received by plaintiff. *See, e.g., Abels v. JBC Legal Group, P.C.,* No. C 04–02345 (N.D.Cal.); *Alexander v. JBC Legal Group, P.C.,* No. CV–05–16–H (D.Mont.); *Casden v. JBC Legal Group, P.C.,*

## DISCUSSION

### I. *Legal Standard for Summary Judgment*

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden is on the moving party to establish the lack of any factual issues. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. The very language of this standard reveals that an otherwise properly supported motion for summary judgment will not be defeated because of the mere existence of some alleged factual dispute between the parties. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rather, the requirement is that there be no "genuine issue of material fact." *Id.* at 248, 106 S.Ct. 2505.

The inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). When the moving party has carried its burden, the party opposing summary judgment must do more than simply show that "there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct.

1348. Under Rule 56(e), the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but ... must set forth specific facts showing there is a genuine issue for trial." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

When considering a motion for summary judgment, the district court "must also be 'mindful of the underlying standards and burdens of proof' ... because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *SEC v. Meltzer*, 440 F.Supp.2d 179, 187 (E.D.N.Y.2006) (quoting *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir.1988)) (internal citations omitted). "Where the non-moving party would bear the ultimate burden of proof on an issue at trial, the burden on the moving party is satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim." *Meltzer*, 440 F.Supp.2d at 187.

Summary judgment should not be regarded as a procedural shortcut, but rather as an integral part of the Federal Rules of Civil Procedure, which are designed to "secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548. Rule 56 must be "construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those persons "opposing such claims and defenses to demonstrate, ... prior to trial, that the claims and defenses

No. 04–60669–Civ (S.D.Fla.); *Culver v. JBC Legal Group, P.C.*, No. 5:04–CV–389 (E.D.N.C.); *Defenbaugh v. JBC & Assoc., Inc.*, No. C–03–0651 (N.D.Cal.); *Dunaway v. JBC & Assoc., Inc.*, No. 03–73597 (E.D.Mich.); *Godfredson v. JBC Legal Group, P.C.*, No. 5:04–CV–390–FL(1) (E.D.N.C.); *Goins v. Brandon*, No. 3:02CV01537 (D.Conn.); *Goins v. JBC & Assoc., P.C.*, No. 3:03cv636 (D.Conn.); *Littledove v. JBC & Assoc., Inc.*, No. S–00–0586 (E.D.Cal); *Martsolf v. JBC Legal Group, P.C.*, No. 04–CV–1346 (M.D.Pa.); *Semper v. JBC Legal Group*, No. C04–2240L (W.D.Wash.); *Sullivan v. JBC Legal Group, P.C.*, No. 04–3752 (E.D.Pa.); *Thinesen v. JBC Legal Group, P.C.*, No. 05–518 (D.Minn.).

have no factual basis." *Id.* By its terms, Rule 56 does not require that a trial judge make any findings of fact. *See Anderson,* 477 U.S. at 250, 106 S.Ct. 2505. The only inquiry to be performed is the determination of whether there is a need for trial. *See id.* The court's principal analysis on a motion for summary judgment is to ascertain whether there are any "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.*

## II. *The FDCPA*

■ The FDCPA prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The sixteen subsections contained in Section 1692e of the Act provide a non-exhaustive list of practices that fall within the FDCPA's ban. *See id.* A debt collection practice may violate the FDCPA even if it does not fall within any of the enumerated circumstances set forth in Section 1692e, *see Bentley v. Great Lakes Collection Bureau, Inc.,* 6 F.3d 60, 62 (2d Cir. 1993) (citing *Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir.1993)), and "[a] single violation of § 1692e is sufficient to establish civil liability under the FDCPA." *Clomon,* 988 F.2d at 1318 (citation omitted); *see also* 15 U.S.C. § 1692k (establishing civil liability for "any debt collector who fails to comply with any provision of this subchapter").

■ The test for determining whether a collection notice violates the FDCPA is "an objective standard, measured by how the 'least sophisticated consumer' would interpret the notice received from the debt collector." *Russell v. Equifax A.R.S.,* 74 F.3d 30, 34 (2d Cir.1996) (citing *Clomon,* 988 F.2d at 1318). The "basic purpose" of

this standard is to "ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Id.* "This least-sophisticated-consumer standard best effectuates the [FDCPA's] purpose of limiting the 'suffering and anguish' often inflicted by independent debt collectors." *Russell v. Equifax A.R.S.,* 74 F.3d at 34 (quoting S.Rep. No. 95–382, 95th Cong., 1st Sess. 3 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696).

■ A debt collector who is found to have violated the FDCPA is liable for actual damages incurred by the plaintiff, as well as any other damages that the court, in its discretion, may find appropriate, not to exceed $1,000, plus reasonable attorney's fees and costs. *See* 15 U.S.C. § 1692k(a); *Russell,* 74 F.3d at 33. Moreover, the FDCPA is a strict liability statute. *See Russell,* 74 F.3d at 34. Accordingly, "a consumer need not show intentional conduct by the debt collector to be entitled to damages." *Id.*

## III. *Plaintiff is Entitled to Partial Summary Judgment Against JBC, Boyajian and ORM*[9]

### A. *Judgment by Default*

■ Pursuant to Federal Rule of Civil Procedure 56(e), if the non-moving party fails to respond to a summary judgment motion, "summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e). As the Second Circuit has announced:

> [L]itigants should be on notice from the very publication of Rule 56(e) that a party faced with a summary judgment motion 'may not rest upon the mere allegations or denials' of the party's pleading and that if the party does not respond properly, 'summary judgment,

9. Since defendant Brandon submitted opposition to the within motion, his alleged liability

will be discussed separately from that of JBC, Boyajian and ORM.

if appropriate, shall be entered' against him.

*Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir.1988) (quoting Fed.R.Civ.P. 56(e)). Furthermore, the local rules of the district courts in the circuit provide notice that action is called for in response to a motion for summary judgment. *See id.; see also* Local Civ. R. 56.1.

The courts in this circuit routinely grant summary judgment by default where a party fails to respond to the motion in violation of court rules and/or scheduling orders. *See, e.g., Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248 (2d Cir.1997) (granting summary judgment by default for failure to respond to the motion despite a local court rule that failure to respond to a motion is deemed consent to the motion); *In re Towers Fin. Corp. Noteholders Litig.*, 996 F.Supp. 266 (S.D.N.Y.1998) (granting default judgment against defendants who failed to respond to summary judgment motion by court-ordered deadline); *Sea–Land Serv., Inc. v. Citihope Int'l, Inc.*, 176 F.R.D. 118, 121 (S.D.N.Y.1997) (granting summary judgment where defendant failed to respond to plaintiff's Rule 56.1 Statement, "a failure that independently results in the facts there set forth being deemed admitted"); *Lediju v. New York City Dep't of Sanitation*, 173 F.R.D. 105 (S.D.N.Y.1997) (granting summary judgment by default for plaintiff's failure to respond to defendant's summary judgment motion and failure to obey scheduling orders); *Modefine S.A. v. Burlington Coat Factory Warehouse Corp.*, 919 F.Supp. 723 (S.D.N.Y. 1996) (granting default judgment against defendants who failed to respond to summary judgment motion by deadline set by court).

Plaintiff filed her motion for summary judgment in this action seven months ago. JBC, Boyajian and ORM were afforded adequate time to oppose the within motion.

No such opposition has been received by the Court. Nor have these defendants communicated with the Court in any way as to their failure to oppose plaintiff's motion. Accordingly, due to the default of JBC, Boyajian and ORM, plaintiff is entitled to have her motion for summary judgment granted as against those defendants.

### B. *Judgment on the Merits*

Even if the Court were to overlook the failure of JBC, Boyajian and ORM to enter any opposition whatsoever to plaintiff's motion, plaintiff is still entitled to summary judgment on the merits of her FDCPA claims.

### 1. *JBC, Boyajian and ORM Qualify as Debt Collectors Under the FDCPA*

■ As a threshold matter, the Court must determine whether JBC, Boyajian and ORM qualify as debt collectors under the FDCPA for purposes of liability. The FDCPA defines a "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). Specifically excluded from this definition are creditors who seek to collect their own debts. *See Kinel v. Sherman Acquisition II LP*, No. 05 Civ. 3456, 2006 WL 5157678, at *5–6, 2006 U.S. Dist. LEXIS 97073, at *17 (S.D.N.Y. Feb. 28, 2006) (citations omitted); *Shevach v. Am. Fitness Franchise Corp.*, No. 98 Civ. 2938, 2001 WL 274121, at *3, 2001 U.S. Dist. LEXIS 2899, at *7 (S.D.N.Y. Mar. 14, 2001) (stating that the FDCPA "creates a cause of action against independent debt collectors rather than creditors seeking to enforce collection of their own debts") (citations omitted); 15 U.S.C.

§ 1692a(6)(F). "An assignee of a debt is also excluded, unless the debt sought to be collected was in default at the time it was obtained." *Kinel,* 2006 WL 5157678, at *6, 2006 U.S. Dist. LEXIS 97073, at *18 (citations omitted); 15 U.S.C. § 1692a(6)(F)(iii) (excluding from the definition of debt collector "any person collecting or attempting to collect any debt owed . . . or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person"). "[T]hose who are assigned a defaulted debt are not exempt from the FDCPA if their principal purpose is the collection of debts or if they regularly engage in debt collection." *Kinel,* 2006 WL 5157678, at *6, 2006 U.S. Dist. LEXIS 97073, at *19 (quotation omitted).

In the instant action, the defendants have admitted that JBC is a debt collector. (Letter from JBC Legal Group, P.C. to plaintiff, dated Jan. 14, 2004, annexed as Ex. B to Larsen Decl. (stating "[t]his is an attempt to collect a debt by a debt collector"); Def. Resp. to Pl. First Set of Discovery Requests, No. 4, annexed as Ex. K to Bromberg Decl. (admitting that JBC Legal Group, P.C. is a " 'debt collector' as that term is defined by 15 U.S.C. § 1692a(6)").) Accordingly, there is no dispute with respect to the ability to hold JBC liable for violations of the FDCPA. Although Boyajian and ORM have failed to interpose any opposition to plaintiff's allegations that they are both debt collectors within the meaning of the FDCPA, the Court will nevertheless examine the status of each to ensure that liability may be properly imposed against them.

■ With respect to Boyajian, a review of the documentary evidence submitted by plaintiff in connection with this action establishes that Boyajian is undoubtedly a debt collector. Boyajian is the President and Secretary, and presumed owner, of JBC Legal Group, P.C. In deposition tes-timony provided by Boyajian in January 2004, he testified in *Goins v. JBC Assoc., P.C.,* No. 3:03cv636 (D.Conn.), that in his role as owner and President of JBC & Associates, P.C., the predecessor to JBC Legal Group, P.C., he "provides services to clients who have debts that are with consumers that I am engaged in recovering for." (Boyajian Dep., 25.) Boyajian further stated that he has sole control over the form of the debt collection notice that is sent to a particular debtor and that he "make[s] the final decision on what letters are sent out and what they contain." (*Id.,* 39–40.) Based on this same deposition testimony, the court in *Goins* found that Boyajian "undisputedly acted as a debt collector." *Goins,* 352 F.Supp.2d at 268. That same finding is made here.

■ With respect to ORM, the Court finds that it, too, is a debt collector within the meaning of the FDCPA. A review of ORM's Answer to the Second Amended Complaint in this action demonstrates that ORM acquired plaintiff's debt in or about October 2003, about the same time that JBC sent its initial debt collection notice to plaintiff. (ORM Ans. ¶ 34.) The business of ORM is to purchase debts that are in default from other entities. (*Id.* ¶ 15.) ORM retained JBC to collect plaintiff's debt. (*Id.* ¶ 35.) Moreover, ORM uses JBC exclusively as the collector on the debts that it purchases. (Boyajian Dep., 42.) As stated above, an assignee of a debt that is in default at the time the debt was obtained is considered a debt collector for purposes of the FDCPA. *See Kinel,* 2006 WL 5157678, at *6, 2006 U.S. Dist. LEXIS 97073, at *18. ORM's business is to purchase debts that are in default from other entities and ORM purchased plaintiff's debt in October 2003—more than ten years after the check plaintiff is alleged to have written was dishonored. The debt was undoubtedly in default before JBC

was retained to collect plaintiff's debt on behalf of ORM, and thus, there can be no doubt that ORM falls within the definition of a debt collector as used in the FDCPA.

Based on the foregoing, the Court finds that JBC, Boyajian and ORM are all "debt collectors" within the meaning of the FDCPA and as such, can be held liable for any violations of the Act.

### 2. 15 U.S.C. §§ 1692e and 1692f

As stated above, the FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Moreover, Section 1692f of the FDCPA mandates that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Plaintiff asserts that defendants have violated Sections 1692e and 1692f in the following ways: (1) by threatening a legal action that cannot be taken; and, (2) by attempting to collect an amount or cost that cannot be recovered.

#### a. Threatening a Legal Action That Cannot be Taken

15 U.S.C. § 1692e(5) specifically prohibits a debt collector from "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). Section 1692e(10) of the FDCPA prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt...." 15 U.S.C. § 1692e(10). In order to establish a violation of Sections 1692e(5) and e(10), the plaintiff must demonstrate two things: (i) threatened action, (ii) which was not intended to be taken. See Bentley, 6 F.3d at 62; Tsenes v. Trans–Continental Credit & Collection Corp., 892 F.Supp. 461, 465 (E.D.N.Y. 1995). "To determine whether a communication from a debt collector constitutes a threat, the reviewing court should look to the language used as a whole." Baptist v.

Global Holding and Investment Co., LLC, No. 04–CV–2365, 2007 WL 1989450, at *2, 2007 U.S. Dist. LEXIS 49476, at *6 (E.D.N.Y. July 9, 2007) (citing Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 25–26 (2d Cir.1989)).

Where a communication merely informs the consumer that the debt collector is seeking repayment, Section 1692e will not be found to have been violated. See Baptist, 2007 WL 1989450, at *2– 3, 2007 U.S. Dist. LEXIS 49476, at *7 (citing cases). Similarly, if the communication "only advises a debtor that the collection agency has several options with which to pursue the debt," this too will generally be found insufficient to constitute a threat in violation of Section 1692e. Id. (citing Spira v. Ashwood Fin. Inc., 358 F.Supp.2d 150 (E.D.N.Y.2005)). However, "an explicit threat of litigation or an implication that legal action is inevitable, when such is not the case, will violate § 1692e(5)." Baptist, 2007 WL 1989450, at *3, 2007 U.S. Dist. LEXIS 49476, at *7– 8 (citing cases).

With respect to the first element, all that is required is that the least sophisticated consumer reasonably interpret the communication as advancing a threat of legal action. Here, the October 24, 2003 debt collection notice explicitly states "**Warning:** You may be sued 30 days after the date of this notice if you do not make payment." (Larsen Decl., Ex. A.) The letter goes on to state as follows: "If you do not make payment, you may be sued under New York General Obligations Law Section 11–104 to recover payment. (Id.) The letter is signed "JBC & Associates, P.C., Attorneys at Law." (Id.) Moreover, the letter "suggests that the only way to avoid ... legal action would be to voluntarily pay the debt[ ]." Baptist, 2007 WL 1989450, at *4, 2007 U.S. Dist. LEXIS 49476, at *12 (citation omitted). A letter

from an attorney informing the recipient that the failure to pay the debt in question will result in litigation could reasonably be construed by the least sophisticated consumer as advancing a threat. *See Bentley*, 6 F.3d at 62 (holding that a letter declaring that a consumer's debt has been referred to an attorney, and that continued failure to pay the debt will result in legal action, could reasonably be interpreted by the least sophisticated consumer to mean that "legal action was authorized, likely and imminent"). Accordingly, plaintiff has satisfied the first prong of a claim pursuant to Sections 1692e(5) and 1692e(10).

 Plaintiff next has the burden of demonstrating that the possibility of the threatened lawsuit could be "ruled out," such that defendants had no intention of ever bringing legal action against her. *Tsenes*, 892 F.Supp. at 465. Plaintiff asserts that the debt for which defendants sought collection was time-barred under New York law and, accordingly, defendants were threatening to "to take ... action that cannot legally be taken" in violation of Section 1692e(5), which also constitutes a "false representation" in violation of Section 1692e(10). Although it is permissible for a debt collector to seek to collect on a time-barred debt voluntarily, it is prohibited from threatening litigation with respect to such a debt. *See Baptist*, 2007 WL 1989450, at *4, 2007 U.S. Dist. LEXIS 49476, at *13 (citing *Freyermuth v. Credit Bureau Servs., Inc.*, 248 F.3d 767, 771 (8th Cir.2001)); *see also Goins v. JBC & Assoc., P.C.*, 352 F.Supp.2d 262, 272 (D.Conn.2005) ("[A]s the statute of limitations would be a complete defense ..., the threat to bring suit under such circumstances can at best be described as a 'misleading' representation, in violation of § 1692e.").

Under New York law, the statute of limitations for an action to recover for a fraudulent check is six years. *See* N.Y.

C.P.L.R. 213. At the time that defendants issued the October 24, 2003 debt collection notice to plaintiff, the check referenced in the communication, which was dated April 14, 1993, was more than ten years old. (Larsen Decl., Ex. A.) Accordingly, any action to collect on that debt would have been time-barred. Given the fact that Boyajian, the owner and operator of JBC, as well as the President of ORM, is a licensed attorney, it is certainly reasonable to conclude that defendants were aware that any legal action with respect to plaintiff's purported debt would be fruitless. "To allow a debt collector to threaten a consumer with legal action, even though the statute of limitations would provide the consumer with the ultimate defense, would be to encourage manipulation and misuse of the legal system." *Baptist*, 2007 WL 1989450, at *5, 2007 U.S. Dist. LEXIS 49476, at *15.

Based on the foregoing, it is clear that the October 24, 2003 debt collection notice sent to plaintiff by JBC threatened legal action that could not be taken, which also constitutes a false representation. By doing so, JBC, Boyajian and ORM violated Sections 1692e(5) and 1692e(10) of the FDCPA and plaintiff is entitled to summary judgment on those claims.

b. *Attempting to Collect an Amount That Cannot be Recovered*

 15 U.S.C. § 1692f(1) prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

The October 24, 2003 letter sent to plaintiff by JBC states as follows:

If you do not make payment, you may be sued under New York General Obligations Law Section 11–104 to recover payment. If a judgment is rendered

against you in court, it may include not only the original face amount of each check and the service charge for each check, but also statutory penalties equal to twice the face amount of each check or Four Hundred Dollars ($400.00) per check, whichever is less.

(Larsen Decl., Ex. A.) Plaintiff asserts that the above-quoted language violates 15 U.S.C. § 1692f(1) because defendants failed to comply with the notice and mailing requirements set forth in New York General Obligations Law § 11–104, which are prerequisites to obtaining the statutory penalties provided for thereunder. As noted above, JBC, Boyajian and ORM have not provided any opposition to plaintiff's assertion.

New York General Obligations Law § 11–104 provides for the recovery of "additional, liquidated damages" in situations where an individual tenders a check that he or she knows or should know will not be honored for payment. N.Y. Gen. Oblig. § 11–104(1). To be entitled to such additional damages, however, the payee must comply with the requirements of Section 11–104(7) of the New York General Obligations Law, which provides that "[t]he first written demand for payment on the dishonored check ... shall be sent ... by first class mail and by certified mail return receipt requested with delivery restricted to the drawer ..." *Id.* § 11–104(7). The statute further requires that "[t]he second written demand for payment on the dishonored check ... shall be sent ... by first class mail on or after the fifteenth day following the date of receipt of the first written demand for payment." *Id.* The notice language that is required to be employed when sending a "Demand for Payment of Dishonored Check" under the New York General Obligations Law is set forth in subsection 8 of the statute. *See* N.Y. Gen. Oblig. § 11–104(8). Finally, the statutory damages recoverable under the New York General Obligations Law for a

dishonored check are limited to "twice the face amount of the check or four hundred dollars, whichever is less." N.Y. Gen. Oblig. § 11–104(3).

Although plaintiff asserts in her memorandum of law in support of her motion that defendants failed to comply with the notice and mailing requirements of New York General Obligations Law § 11–104, (Pl. Mem. of Law in Supp. of Partial Summ. J., 16–17), no such statement is included in plaintiff's declaration in support of her motion. Nor has plaintiff provided any documentary evidence from which the Court could reasonably conclude that such a failure on defendants' part occurred. However, as stated above, New York General Obligations Law § 11–104(3) limits the amount of "additional, liquidated damages" that a payee may seek to "twice the amount of the check or four hundred dollars, whichever is less." N.Y. Gen. Oblig. § 11–104(3). Here, the communication sent by JBC to plaintiff on October 24, 2003 states that if a judgment were to be rendered against plaintiff under New York General Obligations Law Section 11–104, "it may include not only the original face amount of each check *and the service charge for each check,* but also statutory penalties equal to twice the amount of each check or Four Hundred Dollars ($400.00) per check, whichever is less." (Larsen Decl., Ex. A) (emphasis added). The service charge for each check is plainly not recoverable under New York General Obligations Law § 11–104.

Accordingly, by stating that they would attempt to collect from plaintiff an amount of damages that is not permitted by law, JBC, Boyajian and ORM have violated 15 U.S.C. § 1692f(1) and plaintiff is entitled to summary judgment on that claim.

### 3. *15 U.S.C. § 1692g*

When a debt collector solicits payment from a consumer, it "must—within five

days of the initial communication—provide the consumer with a detailed validation notice" that includes the following information:

 (1) the amount of the debt;

 (2) the name of the creditor to whom the debt is owed;

 (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

 (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

 (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

*Savino v. Computer Credit, Inc.*, 164 F.3d 81, 85 (2d Cir.1998); 15 U.S.C. § 1692g(a). "This information ... arms the consumer with the facts necessary to challenge the debt allegedly owed prior to submitting payment to the collection agency." *Kolganov v. Phillips & Cohen Assoc., Ltd.*, No. CV–02–3710, 2004 WL 958028, at *2, 2004 U.S. Dist. LEXIS 7069, at *5–6 (E.D.N.Y. Apr. 8, 2004) (citations omitted). "However, 'it is not enough for a debt collection agency simply to include the proper debt validation notice in a mailing to a consumer—Congress intended that such notice be clearly conveyed.' " *Rumpler v. Phillips & Cohen Assoc., Ltd.*, 219 F.Supp.2d 251, 258 (E.D.N.Y.2002) (quoting *Russell,* 74 F.3d at 35).

Plaintiff asserts that defendants violated 15 U.S.C. § 1692g in two ways: (1) by failing to set forth the amount of the debt owed and (2) by overshadowing and contradicting the validation notice. As with the other provisions of the FDCPA, the "least sophisticated consumer" test is used to determine whether a violation of Section 1692g has occurred. *See Russell,* 74 F.3d at 34.

### a. *Failing to Set Forth the Amount of the Debt*

██ Plaintiff argues that the debt collection notice sent to her by JBC violates 15 U.S.C. § 1692g(a)(1) because it does not clearly set forth the amount of the debt that she purportedly owes. The October 24, 2003 communication states in two separate places that the amount of the debt owed is $43.87, which includes the "face amount" of the check plus a $20 "return charge" or "service charge." (Larsen Decl., Ex. A.) However, in another portion of the letter, defendants state that "[f]ull amount of the check(s) and a *$25.00* service charge for each check listed is now due in our office." (*Id.*) (emphasis added.) This language would appear to indicate that the debt that plaintiff allegedly owes is actually $48.87, not $43.87, as stated elsewhere in the communication. Then, just above the signature line, the letter states "Please remit $43.87 payable to JBC & Associates, P.C. and mail to the above address." (*Id.*) The least sophisticated consumer could reasonably conclude that the debt collection notice sets forth two different amounts with respect to the amount of the debt owed and therefore be confused as to which amount they are being instructed to remit to the debt collector.

Accordingly, the failure by JBC to clearly convey the amount of the debt owed in the October 24, 2003 debt collection notice sent to plaintiff violates 15 U.S.C.

§ 1692g(a)(1) and plaintiff is entitled to summary judgment against JBC, Boyajian and ORM on that claim.

### b. *Overshadowing and Contradicting the Validation Notice*

 Where a debt collection notice "contains language that 'overshadows or contradicts' other language informing a consumer of her rights, it violates the [FDCPA]." *Id.* (quoting *Graziano v. Harrison,* 950 F.2d 107, 111 (3d Cir.1991) (stating that "the juxtaposition of two inconsistent statements" renders the debt collection notice invalid under § 1692g). The question, therefore, is "whether, from the perspective of the least sophisticated consumer, language contained in the [debt collection] notice overshadowed or contradicted the mandatory validation notice; if so, then the [FDCPA] is violated." *Russell,* 74 F.3d at 35. A debt collection notice will be found to be overshadowing or contradictory where "it fails to convey the validation information clearly and effectively and thereby makes the least sophisticated consumer uncertain as to her rights." *Savino,* 164 F.3d at 85 (citing *Russell,* 74 F.3d at 35)). "It is unnecessary to prove the contradiction is threatening." *Russell,* 74 F.3d at 35.

Here, the October 24, 2003 debt collection notice sent to plaintiff by JBC begins with the following language: **"Warning: You may be sued 30 days after the date of this notice if you do not make payment."** (Larsen Decl., Ex. A.) Plaintiff asserts that this statement violates the FDCPA because it threatens plaintiff with adverse consequences—namely, a lawsuit—if she does not remit payment within thirty days of the date of the notice, rather than within thirty days of her receipt of the notice, as statutorily mandated under 15 U.S.C. § 1692g(a)(3). The letter goes on to state that plaintiff has "thirty (30) days from receipt of this letter to pay the full amount" and the validation notice contained at the bottom of the letter states that plaintiff has thirty days from receipt of the notice to dispute the debt. (*Id.*) The various statements indicating different times within which plaintiff is required to respond are clearly contradictory.

"By specifying that the debt must be disputed within thirty days from the date of receipt of the notice, Congress has consciously protected against abusive tactics of debt collectors, such as the backdating of notices or other practices that might shorten debtors time to respond." *Cavallaro v. The Law Office of Shapiro & Kreisman,* 933 F.Supp. 1148, 1154 (E.D.N.Y. 1996). In the within action, although the FDCPA permits consumers thirty days from the receipt of a debt collection notice to dispute a debt, defendants herein demand that payment be made thirty days from the date of the notice or else litigation against plaintiff may be commenced. Such a demand implies that plaintiff has less than the statutorily required time period provided for under 15 U.S.C. § 1692g(a)(3) to dispute her debt.

Moreover, "[e]ven the least-sophisticated consumer would calculate that payment must be mailed in advance of a deadline in order to be received by that deadline." *Swift v. Maximus, Inc.,* No. 04–CV–216, 2004 WL 1576618, at *4 (E.D.N.Y. July 15, 2004). Accordingly, "the consumer holds a notice that demands payment from less than thirty days from when she received the letter, and she calculates that payment must be mailed several days before the deadline." *Id.* Under such circumstances, "[t]he letter's demand for payment takes on a quality of 'immediateness.'" *Id.*

Where an immediate demand for payment is included in a debt collection notice, the demand "must be paired with 'transitional language'" informing the consumer that the demand does not override his or her rights under Section 1692g to dispute

or seek validation of the debt. *Id.* (quoting *Savino,* 164 F.3d at 86). Although the Court presumes that the letter is read in its entirety, *see McStay v. I.C. Sys., Inc.,* 308 F.3d 188, 191 (2d Cir.2002), "when the statements are contradictory there is a greater need for clarifying transitional language." *Swift,* 2004 WL 1576618, at *4 (citing *Hillaire v. Delta Funding Corp.,* 2002 WL 31123860, at *3 (E.D.N.Y. Sept. 26, 2002)). No such clarifying language can be found in the October 24, 2003 debt collection notice sent by JBC to plaintiff.

Based on the foregoing, although the demand for payment, standing alone, does not violate the FDCPA, the October 24, 2003 debt collection notice fails to adequately explain to plaintiff that she retains her rights pursuant to 15 U.S.C. § 1692g. Rather, the demand for payment at the top of the letter overshadows and conflicts with the validation notice found at the bottom of the letter, particularly since it is accompanied by a "warning" in bold letters. Accordingly, the letter violates Section 1692g of the FDCPA and plaintiff is entitled to summary judgment against JBC, Boyajian and ORM on that claim as well.

## IV. *Defendant Brandon*

██ Brandon is the only defendant herein to submit opposition to plaintiff's motion. Although difficult to understand, it appears that Brandon's opposition asserts that there is a triable issue of fact as to whether he was functioning as a debt collector on behalf of JBC in 2003 or 2004—the years in which plaintiff was sent debt collection notices—and whether he had any personal involvement with the debt collection notices received by plaintiff. Brandon further asserts that the documentary evidence pertaining to him, which was relied upon and supplied by plaintiff in support of her motion, actually relates to Brandon's involvement with JBC & Associates, Inc., which, according to Brandon, is a wholly separate entity than JBC & Associates, P.C., the predecessor in interest to JBC Legal Group, P.C.

As noted above, in deposition testimony provided by Boyajian in another action, *Goins v. JBC & Assoc., P.C.,* No. 3:03cv636 (D.Conn.), which plaintiff submitted in support of the within motion, Boyajian states that there is no relationship between "JBC [& Associates], Inc." and "JBC [& Associates], P.C." (Boyajian Dep., at 19, annexed to Bromberg Decl. at Ex. FF.) Boyajian further states that "JBC [& Associates], Inc. is a New Jersey corporation that was engaged in collection activities and no longer is doing so. And JBC [& Associates], PC is a California professional corporation, a law firm." (*Id.,* at 21.) Moreover, when asked whether JBC & Associates, Inc. and JBC & Associates, P.C. were a "singular entity that changed its name from Inc. to PC," Boyajian responded "[n]o." (*Id.,* 19.)

Similarly, in deposition testimony provided by Brandon in connection with the same action, which was also submitted by plaintiff in support of the within motion, Brandon states that "JBC [& Associates], Inc." is "a collection agency," while "JBC & Associates, P.C. is a law firm." (Brandon Dep., at 5.) Brandon further states that he is an employee of JBC & Associates, P.C. and formerly an employee of JBC & Associates, Inc. (*Id.*)

The Court has reviewed the documents cited by plaintiff as supportive of the facts pertaining to Brandon contained in plaintiff's Rule 56.1 Statement and can find no evidence that conclusively establishes that Brandon was a debt collector on behalf of JBC in 2003 or 2004. Nor is the Court able to conclude from the evidence submitted that Brandon was personally involved in the debt collection process as it pertained to plaintiff. Moreover, although plaintiff alleges that JBC & Associates,

Inc. is a predecessor in interest to JBC & Associates, P.C. and JBC Legal Group, P.C., the documents provided in connection with the within motion appear to indicate otherwise, as discussed above. Plaintiff's evidence and the inferences to be drawn therefrom squarely conflict with Brandon's opposition. Accordingly, there exists a genuine issue of material fact as to whether Brandon was involved in the debt collection efforts at issue herein and summary judgment in plaintiff's favor against Brandon would be inappropriate.

Based on the foregoing, plaintiff's motion for summary judgment as against defendant Brandon is denied.

### CONCLUSION

For the foregoing reasons, plaintiff's motion for partial summary judgment is granted as to plaintiff's FDCPA claims against defendants JBC Legal Group, P.C., Jack Boyajian and Outsource Recovery Management, Inc. Plaintiff's motion for partial summary judgment is denied as to plaintiff's FDCPA claims against Marvin Brandon.

SO ORDERED.